J-S10002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEE A. A. VAUGHN, | |
| Appellant | No. 2075 EDA 2013 |

Appeal from the Judgment of Sentence July 9, 2013
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002641-2013

BEFORE:  GANTMAN, P.J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 11, 2015**

Appellant, Lee A. A. Vaughn, appeals from the judgment of sentence imposed following his bench trial conviction of knowing and intentional possession of a controlled substance.  Specifically, he challenges the denial of his motion for suppression.  We affirm.

The suppression court provides the factual history of this case:

On the morning of December 18, 2012, at around 10:55 a.m., Police Officer Robert Gutierrez was on duty in the area of 5000 Old York Road.  Officer Gutierrez described the area around 5000 Old York Road as a high crime area, where a lot of drugs are sold, and a lot of robberies and thefts take place. Officer Gutierrez based his opinion on six years of experience within the district.  Officer Gutierrez received a radio call that at 5010 Old York Road there was a report of a person screaming and a male beating a female.  The radio call described a black

_____

[*] Retired Senior Judge assigned to the Superior Court.

male wearing a black jacket. When Officer Gutierrez received the radio call, he was a few blocks away from 5010 Old York Road, and arrived within two minutes.

When Officer Gutierrez arrived at 5010 Old York Road, he observed [Appellant] less than fifteen feet away from the address, on the highway. Officer Gutierrez observed that [Appellant] matched the clothing description of the radio call. Officer Gutierrez stopped [Appellant] and asked him for identification. After Officer Gutierrez stopped [Appellant] he observed another young black male matching the description of the radio call. Officer Gutierrez then frisked [Appellant] to ensure he didn't have any weapons before placing him in the police car. When Officer Gutierrez frisked [Appellant], he felt a large plastic bag in [Appellant]'s right-hand pocket. After Officer Gutierrez felt the plastic bag, [Appellant] freely admitted, without questioning, "I have a little marijuana on me." After detaining [Appellant], a witness pointed to a second black male and identified him as the person who assaulted the female.

(Trial Court Opinion, 6/02/14, at 1-2) (record citations omitted).

The police ran Appellant's identification information and determined that there was an outstanding scofflaw warrant for him for unpaid moving violations. The black bag Officer Gutierrez retrieved when he frisked Appellant contained forty small Ziploc bags each holding a green leafy substance later determined to be marijuana. (**See** N.T. Motion Hearing, 6/03/13, at 10-12). Appellant moved for suppression, which the trial court denied, finding reasonable suspicion and probable cause.[1] (**See id.** at 27-28).

---

[1] At the motion hearing, Appellant rested without presenting any evidence. (**See** N.T. Motion, 6/03/13, at 19).

At a waiver trial, the Commonwealth withdrew the felony charge of possession with intent to deliver and proceeded solely on the misdemeanor charge of knowing and intentional possession. The court convicted Appellant and sentenced him to not less than three nor more than twenty-one months' incarceration, followed by two years of reporting probation.[2] (*See* N.T. Trial, 7/09/13, at 12). This timely appeal followed.[3]

Appellant raises a single question for our review:

> Did not the trial court err in denying [A]ppellant's motion to suppress physical evidence, where police officers, responding to a radio call from an unknown source, lacked reasonable suspicion justifying any detention or frisk of [A]ppellant, who matched only a very general description and whose behavior offered no independent or corroborating indicia of criminality and no reason to believe that he was armed?

(Appellant's Brief, at 3).[4]

Appellant argues that the police subjected him to an unsupported, improper and unnecessary preemptive detention and search. (*See id.* at 8). He maintains that the subsequent discovery of the marijuana was the fruit of an illegal search. (*See id.*). We disagree.

We review the denial of a suppression motion as follows:

---

[2] Appellant waived a pre-sentence investigation report.

[3] Appellant filed a statement of errors on September 4, 2013. *See* Pa.R.A.P. 1925(b). The trial court filed its opinion on June 2, 2014. *See* Pa.R.A.P. 1925(a).

[4] The Commonwealth did not file a brief in this appeal.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Further, [i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.

Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures. Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures. While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and [the Pennsylvania Supreme Court] have recognized exceptions to the warrant requirement.

The reasonableness of a seizure that is less intrusive than a traditional arrest depends upon a three-pronged balancing test derived from **Brown v. Texas**, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), in which the reviewing [c]ourt weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." **Id.** at 50[.] To be deemed reasonable under this standard, such a seizure must ordinarily be supported by reasonable suspicion, based upon objective facts, that the individual is involved in criminal activity.

**Commonwealth v. Gillespie**, 103 A.3d 115, 118 (Pa. Super. 2014) (most citations and internal quotation marks omitted).

- 4 -

To establish reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. To determine whether the officer had reasonable suspicion, the totality of the circumstances must be considered. In this regard, we must give due weight . . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.

*Commonwealth v. Caban*, 60 A.3d 120, 128 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013) (citations and internal quotation marks omitted).

When considering the totality of the circumstances to establish reasonable suspicion that criminal activity was afoot, we need not limit our inquiry to only those facts that clearly and unmistakably indicate criminal conduct. Instead, **even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.**

*Id.* at 129 (emphasis added) (citation and internal quotation marks omitted).

Here, Appellant maintains that the police lacked reasonable suspicion because he matched only a very general description, and there were no corroborating indicia of criminality. (*See* Appellant's Brief, at 9-20).

The trial court decided that the police had reasonable suspicion for a frisk. (*See* N.T. Motion Hearing, 6/03/13, at 27; Trial Ct. Op., at 5). We agree.

Officer Gutierrez, an experienced six year veteran of the police force with personal knowledge that he was in a high crime area, responded

**within two minutes** to a radio call of a violent assault ("male beating on a female"). (*Id.* at 8). At the reported location of the ongoing assault, Officer Gutierrez came upon Appellant, fifteen feet away, wearing a black leather jacket which matched the clothing description on the flash report ("black male in a black jacket"). (*Id.* at 23). When Officer Gutierrez conducted a weapons frisk and detected a bulge during the pat down, Appellant spontaneously volunteered that he was carrying marijuana. (*See id.* at 10; Trial Ct. Op., at 4).

We conclude that the trial court properly decided that in the totality of circumstances Officer Gutierrez had reasonable suspicion to stop Appellant, standing feet away from the location of an assault reported two minutes earlier, in a high crime area, and to conduct an outer clothing pat down for a concealed weapon before placing Appellant in the police car. When Appellant spontaneously admitted marijuana possession, Officer Gutierrez had probable cause to arrest him. (*See* Trial Ct. Op., at 6).

As the trial court aptly notes, "[t]here is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." (Trial Ct. Op., at 5) (quoting *Terry v. Ohio*, 392 U.S. 1, 33 (1968) (Harlan, J., concurring)).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2015